[Sac. No. 640.  Department One.—October 26, 1900.]

## T. A. CROW, Respondent, v. SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant.

DISTRIBUTION of WATER—PUBLIC USE—TENDER OF RATES—CONDITION OF SUPPLY—DUTY OF WATER COMPANY.—Under the provisions of section 1 of article XIV of the constitution, and of the act of March 12, 1885, to enforce the same, the sale, rental, or distribution of water is declared to be a "public use," and it is made the duty of a water company supplying water for distribution

to furnish water upon tender of the established rates, and no other duty than such tender can be lawfully prescribed or imposed by such company as a condition for supplying water as required by law.

ID.—REFUSAL TO SUPPLY WATER FOR IRRIGATION—NONPAYMENT OF PREVIOUS RATES— RULE SUBSCRIBED BY DISTRIBUTEE.—The refusal of an irrigation company to supply water to a distributee for irrigation of his land, upon tender of the established rates therefor, cannot be justified on the ground that the rates for previous years are unpaid, and that by a regulation of the company subscribed by the distributee it was made a condition precedent to the right to receive water that all dues and claims for previous supplies should first be paid. [Beatty, C. J., and McFarland, J., dissenting.]

ID.—CONSIDERATION OF CONTRACT—DUTY OF COMPANY.—The subscription to such rule, considered as a contract for all future time, is without consideration, it being the duty of the irrigation company to furnish water to a distributee at the established rates, whether the distributee agreed to the regulations or not. [Beatty, C. J., and McFarland, J., dissenting.]

ID.—DAMAGES FOR REFUSAL—PROXIMATE DETRIMENT—SPECULATIVE LOSS OF PROFITS NOT ALLOWABLE.—The damage arising from a breach of contract, or in tort, is the detriment proximately caused thereby; and for the refusal of an irrigation company to supply water at its established rates, a loss of profits which the plaintiff might have realized from an unplanted crop, which he would have planted if he had had the water, is too remote and speculative to be allowed as damages.

ID.—MEASURE OF DAMAGES—DIMINUTION IN RENTAL VALUE—DEDUCTION OF PRICE OF WATER.—The proper measure of damages for such refusal is the difference between the rental value of plaintiff's land with the water and its rental value without it, deducting from the difference the lawful price of the water.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order denying a new trial. William O. Minor, Judge.

The facts are stated in the opinion of the court.

E. B. & George H. Mastick, for Appellant.

A regulation by a company supplying water, that no person shall be entitled to be supplied until he has paid all dues for previous supplies, is reasonable and valid, and binding on all customers having notice of it. (*Sheward v. Citizens' Water Co.,* 90 Cal. 635, 642; *Girard Life Ins. Co. v. Philadelphia,* 88 Pa.

St. 393; *People v. Manhattan Gas Light Co.*, 45 Barb. 136; *Tacoma Hotel Co. v. Tacoma Light etc. Co.*, 3 Wash. 316[1]; *Appeal of Brumm* (Pa.), 12 Atl. Rep. 855; *McDaniel v. Springfield Waterworks Co.*, 48 Mo. App. 273, 280; *Shiras v. Ewing*, 48 Kan. 170.) The contract was binding and was supported by the consideration of the water supplied under the rule assented to by plaintiff, at his request. (Civ. Code, sec. 1584; *Mathewson v. Fitch*, 22 Cal. 86; *Nevada Bank v. Steinmitz*, 64 Cal. 301.) The plaintiff could waive the advantage of the law for his benefit. (Civ. Code, sec. 3513.) The discharge in insolvency could not affect the contract. The debt was not paid by the discharge. (*Smith v. Richmond*, 19 Cal. 476, 483; *Chabot v. Tucker*, 39 Cal. 434, 439; *Whitmore v. San Francisco Sav. Union*, 50 Cal. 145.) The court erred on the question of damages. The proper measure of damages was the difference in the rental value, less the price of the water. Uncertain and speculative profits, which might or might not have been realized, are not recoverable, either for a tort or breach of contract. (*Muldrow v. Norris*, 2 Cal. 74, 78[2]; *Giaccomini v. Bulkeley*, 51 Cal. 260; *Friend & Terry Lumber Co. v. Miller*, 67 Cal. 464; *Wallace v. Ah Sam*, 71 Cal. 197, 202[3]; *Chicago v. Huenerbein*, 85 Ill. 594[4]; *Pollitt v. Long*, 58 Barb. 20, 35; *Western Gravel Road Co. v. Cox*, 39 Ind. 260; *Hair v. Barnes*, 26 Ill. App. 580; *Jones v. Nathrop*, 7 Colo. 1; *Redd v. Augusta*, 25 Ga. 386; *Rhodes v. Baird*, 16 Ohio St. 573.)

Maddux & Stonesifer, and L. W. Fulkerth, for Respondent.

The defendant assumed a public duty under the constitution and law of the state, and was bound to furnish the water upon tender of the established rates therefor. (Const., art. XIV, sec. 1; Stats. 1885, p. 98; *Price v. Riverside Land etc. Co.*, 56 Cal. 431; *People v. Stephens*, 62 Cal. 209; *McCrary v. Beaudry*, 67 Cal. 120; *Merrill v. Southside Irr. Co.*, 112 Cal. 435, 436; *Spring Valley Water Works v. Schottler*, 110 U. S. 347; *Crumley v. Watauga Water Co.*, 99 Tenn. 420.) And this is so even though the consumer may be in arrears in his water bills, not-

---

[1] 28 Am. St. Rep. 35.    [2] 60 Am. Rep. 534.
[3] 56 Am. Dec. 313.    [4] 28 Am. Rep. 626.

withstanding there may be a rule of the company that it may shut off the water if such back bills are unpaid, and especially is this the true rule where credit has been given the water consumer on these back bills. (*Crumley v. Watauga Water Co., supra; Merrimack River Sav. Bank v. Lowell*, 152 Mass. 556; *Wood v. Auburn*, 87 Me. 287; *American Waterworks Co. v. State*, 46 Neb. 194.[5]) Respondent is entitled to recover the value of the crop which might have been raised on his land had appellant furnished him the water to irrigate it when he demanded it. (*Rice v. Whitmore*, 74 Cal. 619[6]; *Hale v. Trout*, 35 Cal. 242-46; *Lambert v. Haskell*, 80 Cal. 618; *Hawthorne v. Siegel*, 88 Cal. 167[7]; *Bryson v. McCone*, 121 Cal. 159; *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205[8]; *Hitchcock v. Supreme Tent etc.*, 100 Mich. 40[9]; Civ. Code, sec. 3333.)

VAN DYKE, J.—The appeal is from a judgment in favor of the plaintiff and from an order denying defendant's motion for a new trial. The action was to recover damages for the refusal on the part of the defendant to furnish water to the plaintiff for the irrigation season of 1896 on tender by him of the regular rates therefor.

1. Defendant does not deny the refusal as alleged, but seeks to justify its action on the ground that the plaintiff was indebted to it for water furnished to him in the years 1893 and 1894; that by the regulations of the company, to which the plaintiff had subscribed, it was made a condition precedent to the right to receive water that all dues and claims for previous supplies should first be paid.

To meet this alleged justification on the part of the defendant the plaintiff offered in evidence a certificate of discharge in insolvency, dated September 5, 1896, five days subsequent to the date of the demand by him for water and refusal on the part of the defendant to supply the same. It is contended on the part of the appellant that the certificate of discharge was invalid for the reason that it was not under seal, and also that it was subsequent to the commission of the wrong,

---

[5] 50 Am. St. Rep. 610.

[6] 5 Am. St. Rep. 479.

[7] 22 Am. St. Rep. 291.

[8] 54 Am. Rep. 676.

[9] 43 Am. St. Rep. 423.

if any, on the part of the defendant in refusing to supply the water demanded. Under the view we take of the case, however, it is unnecessary to consider this so-called discharge in insolvency. The alleged contract between the parties relied upon by appellant consisted simply of the applications for water, made by the plaintiff in 1893 and 1894, to which were attached the regulations of the company, including, among other things, the provision that "no land will be supplied with water unless all dues and claims for previous supply on that land shall have been paid." If this could be considered as a contract binding upon the user of water for all future time, it would be without consideration; for it was the duty of the defendant company to furnish the plaintiff with water whether he agreed to the regulations or not.

The use of water, in this state, appropriated "for sale, rental, or distribution" is a public use (Const., art. XIV, sec. 1), and by the act of March 12, 1885 (Stats. 1885, p. 95), enacted to carry out this provision of the constitution, it is made the duty of the company administering such use, "upon demand therefor and tender in money of the established water rates . . . . to sell, rent, or distribute such water" to the inhabitants of the county "at the established rates regulated and fixed therefor, as in this act provided, whether so fixed by the board of supervisors or otherwise," etc. And it is further provided in said act that for failure to do so an action may be maintained for "damages to the extent of the actual injury sustained." By section 552 of the Civil Code the same duties are also imposed upon such corporations in favor of those to whom water had been previously sold by such company. (*Price v. Riverside Land etc. Co.*, 56 Cal. 431; *McCrary v. Beaudry*, 67 Cal. 120; *Merrill v. South Side Irr. Co.*, 112 Cal. 435, 436.) It was therefore the duty of the defendant, under the law as established in this state, to furnish the plaintiff water upon a tender of the established rates; and this rule precludes the idea that any other duties can be prescribed or imposed, except the tender of the rate, as a condition for supplying water, as required by law.

2. The only evidence offered on the part of the plaintiff as to damages consisted of testimony that had he obtained the

water he would have planted a crop of alfalfa from which he would have realized certain profits, but owing to his failure to get the water he did not plant it. This evidence was admitted over the objections and exceptions of the defendant; and the court instructed the jury that the plaintiff was entitled to recover as damages the profits he would have realized from "the crops of alfalfa that he would have raised on the said land had water been furnished by defendant as demanded by the plaintiff, less the cost of planting, cutting and caring of such crops, and less what said land actually produced and netted to plaintiff in the years 1896 and 1897." Herein we think the court was clearly in error.

The measure of damages arising from a breach of contract, or in tort, is the detriment proximately caused thereby. (Civ. Code, secs. 3330, 3333.) The rule embodied in the instruction of the court and under which the testimony on behalf of the plaintiff was admitted is too remote and speculative. The proper measure of damages in a case like this is the difference between the rental value of the land with water and its rental value without it, and the lawful price of the water should also be taken into consideration and deducted. If the land had been actually taken from the plaintiff by the defendant during the period in question, the company would have been liable only for its rental value during the time plaintiff was deprived of it. Conjecture as to profits of the kind sought here cannot be recovered as damages in such cases; they must be damages capable of ascertainment by proof to a reasonable certainty; uncertain and speculative profits, which might or might not have been realized, are not recoverable in such action. (*Muldrow v. Norris,* 2 Cal. 74-78[10]; *Giaccomini v. Bulkley,* 51 Cal. 260; *Chicago v. Huenerbein,* 85 Ill. 594[11]; *Pollitt v. Long,* 58 Barb. 20, 35.) In *Chicago v. Huenerbein, supra,* the action was for damages in flowing water upon plaintiff's land, thereby preventing him from cultivating it. The trial court permitted the plaintiff to prove that if the land had been planted with potatoes the ground would have yielded two hundred bushels to the acre; that they would have sold at about an average of

[10] 56 Am. Dec. 313.    [11] 28 Am. Rep. 626.

seventy cents per bushel when matured.   On appeal the court
say: "The rule for the assessment of damages was wrong.   In
cases of this character the true measure is the fair rental value
of the ground which was overflowed, and not the possible or
even the probable profits that might have been made had the
land not been overflowed.   Such damages are too remote and
speculative, depending upon too large a variety of contingencies
which might never have happened."   In this case one of plain-
tiff's witnesses, and a farmer of experience, testified that even
good farmers in sowing alfalfa "frequently failed to make a
stand," and that that had happened to himself.   The result of
the crop would largely depend upon the amount and character
of the care it should receive, the condition of the weather, and
a variety of other matters entirely uncertain and contingent.
In this case it appears that the plaintiff applied for water on
August 31, 1896, and was refused.   Afterward, having settled
his back indebtedness, he obtained water in the spring of 1897,
having been deprived of the water only about eight months.
He testified that he had the land for six years, and that al-
though he had had water all the time for five of those years
he had never made anything; in fact, after farming it for four
years he became insolvent; yet the jury, under the instructions
and testimony referred to, estimated that if he had got the
water on this particular occasion eight months sooner than he
did, he would have made a clear profit of one thousand and
ninety-one dollars, which was the amount of their verdict.

For the foregoing error on the question of damages the judg-
ment and order denying a new trial are reversed and a new
trial ordered.

Garoutte, J., and Harrison, J., concurred.

A rehearing was denied by the court in Bank November 23,
1900.   Beatty, C. J., and McFarland, J., dissented from the
order denying a rehearing, and Chief Justice Beatty delivered
the following opinion, which was filed November 24, 1900:

BEATTY, C. J.—I dissent from the order denying a rehear-
ing and from the conclusion of the department upon the point
decided.   The defendant did contract, and upon a valuable

consideration, to waive his statutory right to receive water upon payment or tender of the established rate. He agreed that if the defendant would furnish him with water in 1894, without payment in advance, he would make payment before demanding water in 1895. The defendant furnished the water in 1894 without the payment in advance, which it had the right to demand. The credit given was a good and valuable consideration for the plaintiff's agreement to waive his statutory or constitutional right, and the only question—so far as this part of the case is concerned—is whether it is competent for a party to agree in advance to waive a statutory right. In my opinion, the right in question here is one which may be waived by contract, and I think it bad policy to deny to parties in the situation of this plaintiff and defendant the right to make a contract which in many cases would be greatly to their mutual advantage, and as to the propriety and expediency of which they are the best, and ought to be the sole, judges.

McFarland, J., also dissented.