[No. 4878.]

## KIMBALL ET AL. v. THE NORTHERN COLORADO IRRIGATION COMPANY.

1. **Water Rights—Equity Proceedings to Determine Rights—Jurisdiction.**

   A bill in equity will lie to quiet title to water rights.—P. 413.

2. **Same—Pleading—Allegations as to Title.**

   In an action to quiet title to water rights, a complaint which alleges ownership and possession, without setting up the facts constituting a valid appropriation, is sufficient under Mills' Ann. Code, c. 22.—P. 413.

3. **Water Rights—Irrigation Companies—Contracts for Water—Forfeiture—Waiver.**

   Defendant irrigation company agreed to furnish water for lands for a land company or its assigns on condition that a certain rental be paid therefor annually in advance, and, in case of failure for two successive years to pay the rental, the right to water should end and the contract be forfeited. Thereafter payments were allowed to lapse for several years, when a grantee of the land company gave a note for the arrearages, and water was furnished him; and later plaintiffs became owners, and made an agreement whereby they were to receive water by paying the rental in advance, but such agreement was not to prejudice any of defendant's pre-existing rights, if the notes for water rents were not paid. Held, that such acts and conduct of defendant show a waiver of an alleged forfeiture of the contract, and that such waiver, when once suffered, cannot be reclaimed.—P. 419.

*Appeal from the District Court of the City and County of Denver.*

*Hon. F. T. Johnson, Judge.*

Action by J. Kimball and William M. Chase against The Northern Colorado Irrigation Company, a corporation. From a judgment dismissing plain-

tiffs' complaint and defendant's cross-complaint, plaintiffs appeal.   .   *Reversed and remanded, with directions.*

Messrs. HODGES & WILSON and Messrs DORSEY & HODGES, for appellants.

Mr. HUGH BUTLER, for appellee.

In this action to quiet title to lands and a right to the use of water to irrigate them, defendant, in its answer, disclaimed any interest in the lands adverse to plaintiffs, but asserted that they were without any title to the so-called water right, and in its cross-complaint claimed that plaintiffs had forfeited to defendant the water right they once had, and, therefore, asked for a decree of forfeiture.

The court dismissed both the complaint of plaintiffs and the cross-complaint of defendant. Plaintiffs are here with their appeal.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Appellee contends that the complaint does not state a cause of action, in that a bill will not lie to quiet title to a water right; but, if it does, that this complaint is radically defective, in that it merely alleges general ownership of the water right and does not set forth the facts showing a valid appropriation of water. In several cases this court has recognized that such an action will lie.—*Grand Valley Irrigation Co. v. Lesher*, 28 Colo. 273; *Gutheil P. I. Co. v. Montclair*, 32 Colo. 420; *Bessemer I. D. Co. v. Woolley, Ibid.* 437; *Cooper v. Shannon*, 36 Colo. 98.

Unlike an action where a plaintiff seeks to restrain a defendant from unlawfully interfering with his prior appropriation, it is not necessary in a complaint to quiet title specifically to set forth the facts constituting a valid appropriation. In so far as this

particular question of pleading is concerned, the established practice in this state, in an action to quiet title, is that a complaint may properly allege generally ownership and possession and call upon defendant to set up any adverse interest he may have or claim.—Chapter 22 of the Code.

The complaint being good, we next determine— and that is the only important question here— whether plaintiffs own a water right. If they do, the judgment dismissing their complaint is wrong; if they do not, it is right. The material facts are not in dispute.

The defendant is a corporation organized under the laws of this state to build a canal and take water from the Platte river and convey it to owners of lands with which to irrigate them. It made a contract with the Platte Land Company, whereby it agreed to furnish to that company, its successors and assigns, a certain quantity of water for the irrigation of various parcels of land described in the contract, which includes the premises now owned by plaintiffs. Among other things, this contract provided that the Platte Land Company, as rental for the water delivered, should pay annually in advance, on or before May first of each year, at the rate of not less than a dollar and a half an acre and not more than four dollars an acre, as might be established year by year by defendant; and it was provided therein that if the Platte Land Company, its successors and assigns, should fail to pay these dues for any two years in succession, or to take and pay for the water, in accordance with the stipulations prescribed, then its, or their, right to take and use water should immediately end, and the contract should then and there become void, without any declaration of forfeiture or any other act of defendant.

There was another provision, that the payment of the annual rental, at the times and in the manner provided for, was an essential and indispensable condition and consideration.

Thereafter a part of these lands and the accompanying water right were bought by R. A. Long and H. B. Chamberlin, who, in turn, conveyed them to a corporation called the South Denver Gardens Company; and still later, about the year 1896, through *mesne* conveyance, they were acquired by plaintiffs.

The first default in the payment of the annual rent, or cost of carriage, of the water, occurred in 1888. No payments were made thereafter until 1892. Some time during that year, Long, individually or representing the Gardens Company, as owner, applied to defendant company for water and was informed that he could not have it until the arrearages for the previous years were paid. After some negotiations, the defendant agreed to accept Long's note for nearly four thousand dollars, the same being the arrearages of the previous years, and interest. Some payments were subsequently made upon this note. Long again applied for water, but before it was given to him he was required to, and did, give a new note, which was accepted by the company, for the sum of $3,200, and the first note was surrendered. In 1894 the then owners did not pay the rental in advance, but defendant company accepted their note for the rental for that year. Water was furnished for the year 1895, but whether payment was made or not is somewhat uncertain. In 1896 the plaintiffs in this case, who then had acquired the ownership of the lands and claimed ownership of the water rights, applied to defendant company for water for that year, and tendered as payment therefor the amount of annual rent, or cost of carriage, which the defendant had

established. At first defendant refused to accept payment until the sums remaining due on the notes of plaintiffs' grantors, already mentioned, were also paid. This claim of defendant for arrearages, represented by the note for unpaid rentals of previous years, gave rise to a contention between the parties. Whereupon a stipulation in their behalf was entered into by their respective attorneys, and in accordance with that agreement water has been delivered by defendant to plaintiffs on the advance payment of the annual rental from that time to the present. After reciting the facts which have already been narrated concerning the arrearages and the nonpayment of the notes which were given as payment therefor, and that defendant company insists and demands that all these notes, with interest, shall be paid and it shall not be required to furnish water under the contract until they are paid, and that the lands and trees and shrubbery of the plaintiffs are suffering for the want of water, the stipulation between the parties says that defendant company will accept from plaintiffs payment of the annual rental for 1896 and furnish them water accordingly; but if the controversy existing between them as to the payment of these notes is not adjusted, the defendant shall not be in any manner prejudiced by the fact that it entered into this stipulation or that it accepted the annual rental from the plaintiffs or furnished water to them by reason of the agreement. On the contrary, it was agreed that the legal rights of the defendant shall be and remain as they theretofore existed, the same as if plaintiffs had not paid and defendant had not received the annual rental and furnished water for the season of 1896.

Briefly stated, the contention of the plaintiffs, under the undisputed evidence, is, first, that under the constitution and laws of this state, defendant

company, which was organized as a carrier of water to be delivered to consumers, is under obligation, because of its *quasi*-public character and capacity, to deliver water to plaintiffs each year, upon the payment of a sum mutually agreed upon by them as the cost of carriage, or in lieu thereof, such sum as may be fixed in a proper proceeding by the board of county commissioners of the proper county, wholly irrespective of their rights, whatever they may be, under the contract made between defendant and plaintiffs' remote grantor. To this point are cited: Sections 5 and 6, art. 16, of the constitution; sections 311 and 1740, G. S. 1883; *Wheeler v. N. C. I. Co.*, 10 Colo. 582, 588; *Farmers, etc., Co. v. Southworth*, 13 Colo. 111, 121; *Combs v. Agricultural D. Co.*, 17 Colo. 146; *Wyatt v. Irr. Co.*, 18 Colo. 298, 308.

Second, if plaintiffs' rights are measured by this contract alone, whatever be its true interpretation or construction, and if the right of their defaulting grantors thereunder to receive water from defendant could or might have been reasonably forfeited because of their failure to comply with its conditions as to the payment of rental, still, the acts and conduct of defendant in receiving and accepting payments of rental and delivering water to those consumers for years subsequent to those during which the defaults occurred, operates as a waiver of defendant's alleged right to insist upon a forfeiture, which, when once waived, cannot be reclaimed or enforced.

In the view we take of the case it is not necessary to determine what plaintiffs' rights, under the constitution and statutes, are, or the validity, or proper construction, of this contract or of all the relative rights it confers and duties it imposes upon the parties thereto and their privies. After the al-

leged forfeiture by plaintiffs' grantors of their right to receive water from defendant's canal because of their failure for two successive years to pay the prescribed rental, defendant accepted in payment of such arrearages their promissory notes, it was not obliged to deliver water without an annual payment in advance made on or before the first day of May of each year. If it saw fit to waive this provision of the contract as to the advance rental, and thereafter accept the promissory notes of the consumers as payment therefor, as it expressly admits in its answer that it did, in equity this is a waiver of its right to insist that the consumers had forfeited their water right under the contract because of a failure strictly or literally to comply with its terms. Defendant's subsequent conduct in delivering water to these defaulting consumers, plaintiffs' grantors, is consistent with this waiver and manifests that it was willing to overlook the breach of agreement by the consumers, provided the arrearages were paid, though at a later time and in a different manner from that prescribed by the contract. There was no provision in this contract whereby a lien was imposed upon, or created against, the right of consumers to the use of water in case they failed to pay the rental, or that declared that such a lien might be enforced against their grantees, or the payment of such moneys by them insisted upon as a condition precedent to the future use of water.

After plaintiffs acquired ownership of these lands and the accompanying water right, water has been supplied to them by defendant company under the stipulation mentioned, upon the payment of the annual rental, which the defendant itself has fixed The fact that the parties have agreed that the acceptance of the rental and the delivery of the water shall in no wise prejudice defendant, we do not think

of importance. The rights of both parties are, as the agreement itself says, the same as they would be had not the agreement been made or the water delivered or the rental paid. It is not contended here by defendant that the promissory notes given to it by the defaulting consumers, plaintiffs' grantors, are personal obligations of plaintiffs. It seems that the trial court refused to quiet plaintiffs' title, not upon the ground that it did not own the water right, or that defendant was not obliged to furnish or deliver water to them, but because plaintiffs have not come into court with clean hands. In other words, that plaintiffs are not entitled to have quieted a title they own until they have done equity by paying the promissory notes of their defaulting grantors. We do not believe this position is tenable. The right, if any ever existed, by defendant, to enforce the forfeiture for noncompliance with the provisions of the contract by plaintiffs' grantors, has been waived by their conduct, to which we have already referred, and they cannot now reinvest themselves with or regain such right, as against plaintiffs.—2 Story Eq. (12th ed.), § 1325a.

As already stated, except as herein indicated, we expressly leave undecided the construction and true meaning of the contract between defendant and the Platte Land Company, and express no opinion concerning defendant's liability on the promissory notes. In a case where an instrument possessing some of the same features was before this court, it is claimed by plaintiffs that the decision there was that the contract is somewhat similar to the options in this state for the purchase of lands, and that it provides substantially for a series of annual contracts, which the consumer, if he sees fit, might abandon, and call for the delivery of water from the ditch company under his constitutional and statutory

rights.—*S. B. & R. C. D. Co. v. Marfell,* 15 Colo. 302.

But we do not need to pass upon that question, since the alleged right to enforce the forfeiture has been waived, and cannot now be reasserted, by defendant.

*Crow v. San Joaquin and K. R. Canal & Irr. Co.,* 130 Cal. 309, 62 Pac. 562; and *Wood v. City of Auburn,* 87 Me. 287, 32 Atl. 906, cited by plaintiffs, may in some particulars be considered as authority for some of their contentions; but we do not rest this decision upon them, but upon the equitable principle that the acts and conduct of defendant show a waiver of plaintiffs' alleged forfeiture, and that such waiver, when once suffered, cannot be reclaimed.

Defendant's learned counsel discusses at considerable length other objections to the complaint than those hereinabove considered, some of which are more or less of a technical nature. Others may possibly have been waived by filing an answer.

However that may be, they relate to the second cause of action in the complaint, and there seems to have been no effort at the trial by plaintiffs to prove the same, and upon this review their counsel have expressly abandoned it. It, therefore, becomes unnecessary to consider the defendant's objections thereto, because if they were well taken, they would not in any particular affect plaintiffs' first cause of action, which we have held to have been established.

The judgment of the lower court is reversed and cause remanded, with instructions to the district court to enter a decree quieting title in plaintiffs to the lands and water right in question.

*Reversed and remanded.*

Mr. JUSTICE GABBERT and Mr. JUSTICE MAXWELL concur.