NASHVILLE, C. & ST. L. RY. v. TENNESSEE-OKLAHOMA GRAIN CO. et al.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1925.)

No. 4226.

1. Appeal and error ⬤⟿845(2)—Rule as to review, in absence of disputed evidence, in action tried before court, stated.

In an action tried before the judge by agreement, and in which there is no dispute as to the evidence, on writ of error to review judgment, the question for the Circuit Court of Appeals is whether District Court's conclusion is reasonable inference from the facts.

2. Carriers ⬤⟿94(3)—Evidence held to sustain finding that loss on goods delivered without surrender of bills of lading was not due to negligence of bank.

In consignor's action against railroad for loss sustained on delivery to consignees of grain, without surrender of bills of lading sent with drafts attached to bank, facts held to warrant finding that loss was not due to bank's negligence in not applying in payment of such draft proceeds of other drafts deposited in bank by consignee on customers with attached invoices for same grain.

In Error to the District Court of the United States for the Nashville Division of the Middle District of Tennessee; John J. Gore, Judge.

Suit by the Tennessee-Oklahoma Grain Company and others against the Nashville, Chattanooga & St. Louis Railway. Judgment for plaintiffs, and defendant brings error. Affirmed.

W. E. Norvell, Jr., of Nashville, Tenn. (O. H. Guion, of Newbern, N. C., on the brief), for plaintiff in error.

Walter Stokes, of Nashville, Tenn. (John A. Bell, of Nashville, Tenn., on the brief), for defendants in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. This suit was filed in the state court at Nashville, Tenn., to recover from the Nashville, Chattanooga & St. Louis Railway, as initial carrier, the value of 14 cars of grain shipped on order notify bills of lading with drafts attached, and delivered to the consignees without presentation and surrender of the bills of lading. The cause was removed to the United States District Court, and by agreement, not in writing, tried before the judge, who rendered judgment for the amount of the claim.

The plaintiff was a dealer in grain at Nashville, Tenn., and D. H. Dixon, of Goldsboro, N. C., a wholesale commission merchant, was one of its customers. Between January 19, 1923, and March 12, 1923, plaintiff consigned to Dixon, at various points in North Carolina, 31 cars of grain, and on each consignment sent to the Wayne National Bank of Goldsboro, N. C., an order notify bill of lading of standard form, with draft attached. These drafts were presented to Dixon for payment several times, but were not paid. They were then returned to the consignor, but not until the cars had been delivered and it was learned that Dixon was insolvent. The drafts for 17 of the cars were subsequently paid by defendant. The bills of lading for the 14 cars involved in this suit were to the order of the consignor. Eleven of them designated, as the parties to be notified, customers of Dixon at points other than Goldsboro, and 3 of them designated Dixon. In none of them was Goldsboro the point of destination. Deliveries of 12 of the cars were effected by Dixon through forgeries. One car was delivered upon his promise to send the true bill of lading to the delivering agent, he hav-

ing previously sent one that did not cover the car; and the other was delivered upon Dixon's promise to send the bill to the delivering agent.

The method by which the cars and drafts were handled was uniform. Shortly after presentation of the draft of the consignor, Dixon would deposit in the Wayne National Bank his draft on his customer, with attached invoice, for the same grain. The bank would credit his account with the amount of the draft and forward it for collection. The invoice gave the car number given in the bill of lading. It described the contents of the car as oats or corn, as the case might be, designating the unit of measurement as "bushel," whereas the bill of lading used the unit "sax." The amount of Dixon's draft exceeded in each instance that of the consignor. With one exception his drafts were on the parties to be notified in the corresponding bills of lading.

It is admitted by defendant that the final carrier was grossly negligent in delivering the cars. Its defense is that the bank knew, or from all the facts brought to its knowledge by its dealings with Dixon ought to have known, that the cars had been delivered and Dixon paid therefor by the drafts which it had collected, and that its failure to apply the proceeds of those drafts in payment of the consignor's drafts was the negligent cause of the loss.

[1] There is no dispute as to the evidence. The question to be decided here is whether there is evidence to support the judgment (City of Cleveland v. Walsh Construction Co. et al. [C. C. A.] 279 F. 57), or, to be accurate, whether in view of the wrongful deliveries of the carrier any reasonable inference can be drawn from the facts other than the bank was negligent and its negligence caused the loss.

[2] Assuming, without deciding, that the bank was chargeable with notice that the drafts deposited by Dixon covered the shipments for which it held bills of lading, there are difficulties in determining, on the evidence adduced, whether it became the duty of the bank, and if so when, to apply the proceeds of the drafts, or other funds of Dixon on deposit, if any existed, in payment of the drafts of the consignor. The record is silent as to when the drafts were paid in respect to the delivery dates of the cars, whether before or on those dates; and similarly as to whether it had been the practice of Dixon's customers to pay only on delivery or to pay before delivery upon presenta-

tion of the draft. It is conceivable that the drafts were paid without waiting for delivery, and for aught that appears in the record that occurred. If that be true, the claim of negligence as to the bank consisted in its failure to anticipate wrongful delivery by the carrier and to apply the proceeds of a resale of goods in transit to the payment of a draft held by it. If the drafts were not paid until the cars were delivered, its negligence, if any, consisted, among other things, in not knowing or ascertaining that the resale drafts would be paid only upon delivery of the cars. The record does not sustain either proposition to the exclusion of any other reasonable conclusion.

Fourth National Bank v. N. & C., 128 Tenn. 530, 161 S. W. 1144, and Witt v. Railway, 99 Tenn. 422, 41 S. W. 1064, relied on by defendant, do not support its contention. In the first case the shipper had suffered no loss; in the second, the carrier was exonerated on the ground that the consignee subsequently paid the drafts. Pere Marquette R. Co. v. French, 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391, deals with the cause of the loss, the wrongs being admitted. Here the primary question is negligence, and the decision may rest upon that without discussing the cause of the loss.

The responsibility is between the bank and defendant; the latter's liability being indubitable, unless superseded by negligence on the part of the bank. With full recognition of the rule of diligence, applicable to the bank, rational minds might well differ as to the bank's duty to identify the grain sold by Dixon, but there is less reason for difference of opinion as to the propriety of its conduct in disposing of the proceeds of the drafts, for diligence did not, in the absence of reasons not in this record, require it to anticipate that the carrier would break or had broken its contract obligation. It, therefore, cannot be held that a reasonable conclusion to be drawn from the evidence is that the bank was negligent.

The claim as to car GT–23890 shipped on January 23d, and delivered on February 27th, is not invested with merit on account of the notice to plaintiff of March 1st that the car had been delivered. On the latter date the delivery had been effected, and plaintiff's duty to ascertain the conditions thereof was not different from its duty in respect to other deliveries. Nor is it shown by the proof that there was then available means by which the loss could be averted.

Judgment affirmed.