## HUBER et al. v. NEWMAN.

No. 6649.  Decided March 11, 1944.  (145 P. 2d 780.)

See 4 C. J. S. Appeal and Error, sec. 244. What amounts to joint venture, note, 138 A. L. R. 968. See, also, 20 Am. Jur., 683.

Rehearing denied September 1, 1944.

*O. H. Matthews* and *P. G. Ellis,* both of Salt Lake City, for appellant.

*Louis H. Callister,* of Salt Lake City, for respondents.

LARSON, Justice.

Appeal by defendant from judgment of the Third District Court in favor of plaintiffs in the amount of $19,451.03.

Plaintiffs' amended complaint alleges a partnership existing between themselves and defendant, prays for dissolution of the same, and asks an accounting, and judgment for any sums found due and owing from defendant to plaintiffs. Defendant denies existence of a partnership or joint business ventures, and by way of additional defense, alleges that plaintiffs were in his employ and have not accounted to him for certain of his funds with which they were intrusted, and prays an accounting from plaintiffs and judgment against them for any money owing him. After hearing on these issues, the court announced that it determined that the parties were engaged in a joint venture, and ordered an accounting. The matter was referred to one Wallace Dansie as feree. His report was subsequently received without objection of defendant and adopted in substance by the court. Not until after that time were any findings of fact drawn up by the court. Upon such report the court gave judgment in favor of plaintiffs in the sum of $19,451.03. Defendant appeals.

Defendant's principal contention relied upon for reversal is that the District Court was without jurisdiction to refer the matter to a referee or take any action on the referee's report because of its failure to make findings of fact and conclusions of law upon the issues presented by the pleadings before referring the matter. We have a Utah case directily in point and determinative of the contention. In *Gibbs* v. *District Court*, 86 Utah 314, 44 P. 2d 504, 505, a similar situation confronted this court. There suit was brought to set aside assignments of certain mortgages and notes and for an accounting. The court, after announcing informally from the bench that it decided the issues in favor of plaintiff and against defendant, ordered an accounting. A writ of prohibition was sought against proceeding to the accounting and the contention made that the court was without jurisdiction to make such an order in the absence of findings of fact and conclusions of law on issues presented by the pleadings. This court said:

"The question resolved itself into this: In a suit of this kind, is it a duty which the law expressly enjoins on a trial court to first enter judgment as to all matters in bar of the accounting before he can proceed to finish the case by directing an accounting and adjudicating the amount shown to be due in such accounting? Such procedure is not required by any statute nor by any decision of this court. * * * In some jurisdictions the trial court may, whenever necessary, direct an accounting, either with or without the entry of an interlocutory judgment, and may take the proof itself or make a reference therefor. (Citations.) The matter *being within discretion*, it has been said to be not a matter of jurisdiction, but rather of the order of proof in a particular case. *Putnam* v. *Superior Ct.*, supra [209 Cal. 223, 286 P. 425]. The trial judge announces his views as to certain issues, but not having made findings or entered a decree, the whole matter is still before him, and he may reach a different conclusion when the case is finally submitted. The manner in which he proceeds with the trial is discretionary and within jurisdiction. His discretion may not be controlled by this court. This proceeding, therefore, should be dismissed and the alternative writ withdrawn." (Bracket and italics added.)

The court distinguishes this case from *Benson* v. *Rozzelle*, 85 Utah 582, 39 P. 2d 1113, wherein it was held that when the court *erroneously* found a partnership there was no jurisdiction to proceed and order an accounting. See also *Wasatch Oil Ref. Co.* v. *Wade*, 92 Utah 50, 63 P. 2d 1070. This assignment is not well taken.

Defendant's next assignment of error is that the district court erred in failing to make findings of fact upon all of the issues presented by the complaint and answer. Citing 104-26-2 and 3, U. C. A. 1943, and cases annotated thereunder, to the effect that findings must be made ■ every material issue presented by the pleadings. In their amended complaint plaintiffs allege that there was a partnership between themselves and defendant; that said partnership had undertaken certain construction jobs; that defendant was keeping and applying the proceeds of said jobs to his own use and that the defendant refused an accounting of the proceeds of said jobs. They prayed dissolution of the partnership, an accounting, and judgment for any amounts found due and owing from defendant to plain-

tiffs. In his amended answer and counterclaim defendant denies the existence of a partnership; and alleges that he employed plaintiffs in a supervisory capacity; that he intrusted to them certain monies for which they have never accounted; that they mismanaged his affairs intrusted to them; and prays an accounting for the monies so intrusted to plaintiffs. By reply, plaintiffs deny all allegations of the counterclaim. It was upon these issues that the court, after the report of the referee had been given, made its findings and conclusions. The court finds that there was a joint venture on the jobs referred to in the pleadings, with an agreement to split the profits or losses three ways; that there has never been any complete accounting from defendant to plaintiffs; and that plaintiffs are entitled to such accounting. From the referee's report and other evidence the court finds that there is $19,451.03 due from defendant to plaintiffs. Defendant complains of the court's failure to make a finding that there was no partnership or employer-employee relationship as alleged in his answer. The rule in this jurisdiction is that the trial court must make findings on all issues raised by the pleadings and the evidence. In re *Thompson's Estate*, 72 Utah 17, 35, 269 P. 103; *West* v. *Standard Fuel Co.*, 81 Utah 300, 17 P. 2d 292; *Simper* v. *Brown*, 74 Utah 178, 186, 278 P. 529. Defendant maintains that there were two issues: Was the relationship of the parties a partnership; and was their relationship one of employer and employee? However, as we view the matter there was but a single issue presented: What was the relationship of the parties in the various transactions? On that question the court made a finding, to wit, that the parties were joint adventurers and this *necessarily* disposed of the entire issue since if that relationship existed they could not be either partners or in an employer-employee relationship. *Wells* v. *B. F. Porter Estate*, 205 Cal. 776, 272 P. 1039, 1041, is a situation similar to the one here involved. The court there said:

"Appellant claims that the findings do not cover all the issues made by the pleadings, and particularly those arising under its affirmative

defense. The court found expressly upon all the issues made by the amended complaint and the denials of the answer. These findings are inconsistent with the allegations of appellant's affirmative defense. They therefore were sufficient, and it was unnecessary to make particular findings as to the issues made by the affirmative allegations of the answer." (Citing cases.)

And in *Phillips* v. *Stark*, 65 Cal. App. 136, 223 P. 443, 445, it is said:

"Where issues upon which findings are made are *necessarily decisive of the case*, it is unnecessary that the findings should dispose of any further issues as all other issues thereby become immaterial. (Citing cases.) The trial court having decided and found, in the language of the complaint, that the contract pleaded by the amended complaint was the contract made and breached, by necessary implication, found against the contract set up in the amended answer." (Citing cases.) (Italics added.)

Even though failure of the trial court to make a negative finding that there was no partnership, or employer-employee relationship were error, it would not be prejudicial error requiring reversal since had such findings been made the judgment would have been the same in any event. *Piper* v. *Hatch*, 86 Utah 292, 43 P. 2d 700. See also *I. X. L. Stores Co.* v. *Moon*, 49 Utah 262, 162 P. 622. This assignment is not well taken.

The next assignment which we shall consider is ■ that the findings are not supported by the evidence. In *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465, 466, the court set out the scope of review in equity cases:

"The scope of the review on appeal in equity cases is clearly settled in this jurisdiction. 'This court is authorized by the state Constitution to review the findings of the trial courts in equity cases, but the findings of the trial courts on conflicting evidence will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of the evidence.' *Olivero* v. *Eleganti*, 61 Utah 475, 214 P. 313, 315." (Also citing other authority.)

In the instant case, while much of the evidence is conflicting, it does not appear that the court has "misapplied proven

facts or made findings clearly against the weight of the evidence," and therefore the findings stand.

Defendant makes a number of additional assignments all of which may be considered together; such as objections to the referee's report; his alleged failure to take an oath; and his procedure in gathering information for said report. The record reveals that at the time the report was brought into court and filed while the hearing thereon was still in progress to determine whether the court should adopt, reject or modify the report, defendant made no objection to the qualifications of the referee, nor to the methods used by the referee in obtaining his information, nor to the report being received and considered by the court as the report of the referee. True each party contested one or two items in the report not as to the fact but as the conclusion to be made therefrom. Such objections to the meaning of specific items without more general objections waive the objections not then made but argued in the brief. It is elementary that when a party does not raise objections below when he had notice and opportunity to object, he may not be heard to complain for the first time on appeal. We hold, therefore, that defendant waived all of these defects, if any there were, by failing to object below and we shall not further consider them. As to the failure of the referee to take an oath the record in the instant case is silent as to whether he was sworn or not. A presumption therefore arises that he was sworn. *Appel* v. *Fleuchaus*, 151 A. 97, 8 N. J. Misc. 501; *Logan* v. *Brown*, 20 Okla. 334, 95 P. 441, 20 L. R. A., N. S., 298. These assignments are therefore not well taken.

This leaves but one question, as to whether the court properly included in the judgment an order requiring each party to furnish bonds for the indemnification of the other before execution on a portion of the judgment might be had. The paragraph objected to reads:

"That the plaintiffs shall not have execution upon this judgment for the sum of $6,808.06 until such time as they shall submit to this court an indemnity bond indemnifying the defendant against payment

of certain claims * * * and re-negotiations of contracts, said indemnity bond to be approved by this court, not to exceed $7000.00; upon condition, however, that defendant give to these plaintiffs the same type of indemnity bond within five days, or such time as the court may deem just and proper in the premises. Upon approval of said bonds the plaintiff shall have execution for the difference between the said $12,642.97 and $19,451.03, that is, $6,808.06, or upon the refusal of the defendant to post a bond as herein provided."

While the wording in the judgment might suggest that defendant, who was the judgment debtor, was required to post an indemnity bond for $3,300 within five days after judgment, regardless of whether plaintiffs had posted their bond for $7000, the conclusions of law clearly reveal that such is not the purpose or effect of the language used. The conclusions of law definitely state that defendant shall have five days or such further time as the court may allow, *after* the approval by the court of plaintiffs' indemnity bond, in which to post his indemnity bond in the sum of $3,300. The judgment must be construed in the light of the conclusions and must be read and given effect as indicated in the language of the provision referred to, as to the time and conditions under which defendant is required to post his bond; that is, that defendant have at least five days after approval of plaintiffs' bond in which to file his bond. And in the conclusions of law, the court provided that while plaintiffs must give defendant a bond in the amount of $7000 defendant's bond should be only in the amount of $3,300. The provision for bond to indemnify defendant is certainly favorable to him and in fact apparently resulted from evidence introduced by him regarding certain unpaid possible claims which might or might not have to be met at some future time. It is the policy of the court having such a matter within its jurisdiction to dispose of the entire controversy if possible and the only way in which such disposition could justly be made under the circumstances of the instant case would be by some order which would protect all parties in the event of the presentation of claims. Since they were joint adventurers, they were jointly liable and when a division of the

profits was made it was only just and equitable for the court to protect all three against the failure of any one of them to pay his proportionate share of claims. Therefore, it was not improper to provide for a bond to indemnify plaintiffs. But assuming that the part of the judgment with reference to the posting of indemnity bonds were improper and void, appellants do not profit thereby. Plaintiffs posted no bond, and so appellant was not required to and did not post an undertaking. So each party stands in the position he would have occupied had such provision not been in the judgment. Plaintiff did not seek execution for the $6,808.06 part of the judgment. Appellants were not, are not, and cannot be injured thereby.

Complaint is made that the judgment for $19,451.03 is contrary to the findings which it is claimed show plaintiffs entitled only to judgment in the sum of $12,642.97. While there are some awkward expressions in the findings wherein the court is seeking to protect appellant in regard to the $6,808.06 item (supra), the findings do recite that "the court further finds that plaintiffs are entitled to a judgment of this court in the sum of $19,451.03." The conclusions of law contain a holding to the same effect. The judgment therefore conforms to and is supported by the findings of fact.

Judgment of the lower court is affirmed. Costs to respondents.

McDONOUGH, J., concurs.

WOLFE, Chief Justice (concurring).

While I concur in the result and in the reasoning, I am not quite in accord with the accuracy of the statement concerning this court's policy in a review of equity cases. In the concurring opinion in *Stanley* v. *Stanley*, 97 Utah 520, at page 529, 94 P. 2d 465, an attempt was made to review the language used in many of the Utah cases concerning this court's duty and procedure in the review of equity cases

and then to fasten on some accurate expression of that duty and procedure. The language in that concurring opinion has been quoted with approval by this court in at least one case. I do not think we review the findings of the lower court in the sense that when we read the record we make the findings the focal point of our inquiry as to whether or not they are supported by the evidence. The mental processes of a judge looking over a record to determine from it his conclusions differ from those which take place where he has the findings in mind and is reading the record with a view of critically determining whether the evidence preponderates for or against the findings.

In *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465, this writer stated that:

"Our duty is to make an independent examination of the record. If after that we find (1) the preponderance of the evidence supports the trial court's findings of fact, or (2) if there is doubt in our minds as to where the preponderance lies, or (3) we think the evidence as revealed by the record may slightly preponderate against its conclusions but such preponderance may well be offset in favor of his conclusions by having seen the witnesses and been able to judge by their demeanor as to their credibility, then we will not reverse. The expressions that there must be a 'clear' or 'fair' preponderance of the evidence against the findings of the trial judge, seek to allow for his advantaged position in having seen the behavior of the witnesses on the stand."

It is because an examination of the record in this case meets that test that I concur.

WADE, Justice (concurring).

I concur with Mr. Justice Larson's opinion except as to his statement of the court's policy in reviewing equity cases, in that respect I agree with what is said in Mr. Chief Justice WOLFE'S opinion.

MOFFAT, Justice, participated in the hearing but was, before the publication of the opinion, deceased.